**In the Matter of an Arbitration between**

**EXPORTKHLEB, Petitioner,**

**and**

**MAISTROS CORPORATION,**
**Respondent.**

**No. 91 Civ. 6522 (MEL).**

United States District Court,
S.D. New York.

April 22, 1992.
As Corrected April 28, 1992.

Waesche, Sheinbaum & O'Regan, P.C., New York City, for petitioner (Donald M. Waesche, of counsel).

Burlingham Underwood & Lord, New York City, for respondent (Michael Marks Cohen, Terry L. Stoltz, Matthew Q. Berge, of counsel).

LASKER, District Judge.

Maistros Corporation ("Maistros") seeks to vacate an arbitration award against it of $932,818.24 on the grounds that the arbitrators exceeded their powers under the Federal Arbitration Act, 9 U.S.C. § 10(d), and that, under the terms of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 21 U.S.T. 2517, T.I.A.S. 6997 (1970) (reprinted as a note following 9 U.S.C. § 201), the award went beyond the scope of the issue submitted to arbitration and violated public policy. Exportkhleb has made an opposing motion to confirm the award of the arbitrators. The crux of Maistros' argument is that a limitation of liability proceeding—concluded over two years before the arbitrators granted the award—bars an affirmative award against Maistros in connection with the incident in question.

The petition to vacate is denied, and the petition to confirm is granted.

I.

The Master Petros, a ship owned by Maistros, set sail for the Soviet Union on December 12, 1984, with cargo including 36,276.52 metric tons of yellow corn owned by Exportkhleb on board. After various mishaps, it ran aground on January 24, 1985 and the voyage was abandoned. On February 12, 1985, Exportkhleb sued Maistros *in personam* and the Master Petros *in rem* in the United States District Court for the Eastern District of Louisiana for damage to the corn caused by the accident. Maistros promptly petitioned the Louisiana court for exoneration from or limitation of liability on all claims arising from the voyage, pursuant to the U.S. Vessel Owner's Limitation of Liability Act, 46 U.S.C.App. § 183. That Act provides that where the shipowner is not "in privity" with the accident, the shipowner's liability is limited to the amount or value of its interest in the vessel. On April 15, 1985, the Louisiana court, pursuant to Rule F(3) of the Supplemental Rules for Certain Admiralty and Maritime Claims, enjoined the filing or further prosecution of any proceeding against Maistros in connection with the incident and required all parties with claims relating to the voyage to submit those claims in the limitation proceeding.[1] Thereafter, Exportkhleb timely filed its claims for cargo damage in the Maistros limitation of liability proceeding.

However, in early 1986, Exportkhleb moved the Louisiana Court to withdraw its claim from the limitation proceeding and to dismiss its separate cargo damage action, without prejudice. Maistros opposed the motion, arguing that the withdrawal should be with prejudice. However, on July 29, 1986, the Louisiana court granted Exportkhleb's motion to withdraw and dismiss without prejudice.

Subsequently, the claims of the parties other than Exportkhleb in the limitation proceeding were settled with Maistros, and on December 4, 1986, although Exportkhleb's claim for cargo damage was still

---

**1.** Rule F(3) states, "On application of the plaintiff the court shall enjoin the further prosecution of any action or proceeding against the plaintiff or the plaintiff's property with respect to any claim subject to limitation in the action."

unresolved, the court entered a decree permanently enjoining all further proceedings against Maistros in connection with the incident. The order—a decree of exoneration from liability and final dismissal—stated:

> Maistros Corp ... [is] hereby declared permanently and forever exonerated from any liability of any sort, or from any complaint, claim, demand or suit in any way directly or indirectly connected with the matters which are the subject of the complaint herein;

> All persons having, or claiming to have against Maistros Corp.... any right, demand or cause of action, in any way connected with the matters which are the subject of the complaint herein be, and they are hereby, permanently enjoined from commencing, prosecuting or proceeding with any such claim, suit, demand, or cause of action in any court or forum whatsoever;

It is to be noted that Exportkhleb was no longer a party to the limitation proceeding at the time of the entry of the order.

On January 6, 1987, Maistros informed Exportkhleb of its intention to seek arbitration on a claim for general average contribution against Exportkhleb growing out of the Master Petros voyage. On May 17, 1989, Exportkhleb sent Maistros a letter in which it stated, "we intend to counterclaim [i.e., before the arbitrators] for the damage sustained to the cargo in the amount of $578,052.91, plus a percentage of the cost of discharging the corn at Boothville." The first hearing before the arbitrators was held on June 26, 1989.

On August 16, 1991, the three arbitrators unanimously denied Maistros' claim for general average contribution in the amount of $242,938.59, but granted Exportkhleb $932,818.24 ($578,052.91 plus interest) on its counterclaim.

II.

Maistros contends that the arbitrators "exceeded their powers" by granting Exportkhleb a positive recovery despite the Louisiana court's enjoining further proceedings against Maistros in connection with the voyage.[2] It also asserts that the award decided "matters beyond the scope of the submission to arbitration."[3] Finally, Maistros argues that the panel's granting of an affirmative recovery outside the limitation of liability proceeding is "flatly contrary to the whole purpose and scheme of the Limitation of Liability Act."[4] Maistros asserts that one of the crucial features of the Limitation of Liability Act is the right of a petitioning shipowner to require all claimants to file their claims in a single proceeding, and that that policy is threatened by the award. Maistros contends that Exportkhleb's cargo claim was clearly disposed of when it was voluntarily withdrawn from the limitation proceeding. It argues that the very purpose of the statute would be defeated if a claimant could acquire the right to litigate outside the limitation proceeding simply by withdrawing from it.

However Exportkhleb did not simply withdraw from the proceeding, it received permission from the district court in Louisiana to withdraw its claim without prejudice, over Maistros' strong opposition. It is not clear why Exportkhleb was permitted to withdraw from the limitations proceeding without prejudice, but it was. Exportkhleb's position is that, in granting Exportkhleb's motion to withdraw its claim without prejudice, the Louisiana court left both parties free to arbitrate their respective claims. This is a reasonable interpretation of the language of the order. Nevertheless, even if this were not the case, it is clear that Maistros waived its objection to the arbitrability of Exportkhleb's counterclaim by never asserting the objection.

---

**2.** *See* Federal Arbitration Act, 9 U.S.C. § 10(d).

**3.** *See* Article V(1)(c) of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 21 U.S.T. 2517, T.I.A.S. 6997 (1970) (the "Convention").

**4.** *See* Article V(2)(b) of the Convention (providing that an award shall not be confirmed if its enforcement would be contrary to public policy).

Maistros' argument distills to one that, to the extent Exportkhleb's counterclaim called for a positive recovery, the arbitrators had no power to rule because of the existence of the prior limitation proceeding in Louisiana. Maistros contends that Exportkhleb was entitled to assert the claim in the arbitration only as a set-off against any recovery on Maistros' claim for general average. However, even though on the face of Exportkhleb's notice to Maistros it was apparent that Exportkhleb was seeking a positive recovery—because the amount of Exportkhleb's counterclaim (of more than $578,052.91) greatly exceeded that of Maistros' claim ($242,938.59)—Maistros never sought a judicial ruling that the claim was non-arbitrable to the extent it exceeded Maistros' claim, nor did it ever argue before the panel that it had no authority to allow Exportkhleb a positive recovery, either as a defense against the jurisdiction of the arbitrators or on the merits of the case as presented to the arbitrators. Thus Maistros waived its objection to the arbitrability of the counterclaim.

Maistros contends that it did not waive its defense because in its words:

> No controversy then existed about the effect of the order entered in the limitation of liability proceeding. It was not until the arbitrators *sua sponte* gave those orders a construction never sought by Exportkhleb that the orders suddenly became an issue. Maistros cannot in fairness be said to have waived an argument it never knew it was called upon to make.

(Maistros' Reply Memorandum in Support of Motion to Vacate at 2). This contention is without merit. The arbitrators did not act *sua sponte*, but rather on a specified counterclaim of which generous advance notice had been given to Maistros. Moreover, the arbitrators were fully informed of the monetary basis of Exportkhleb's claim—"The difference between the corn purchase price and its ultimate salvage value" (Final Award, page 5).

## WAIVABILITY

The only basis upon which Maistros can prevail, therefore, is if the objections which it did waive are nonwaivable as a matter of public policy. However, even Maistros does not specifically take the position that the defenses they now raise were not waivable. And even assuming that its arguments with respect to *The San Pedro*, 223 U.S. 365, 32 S.Ct. 275, 56 L.Ed. 473 (1912), refer to non-waivability, as discussed below, *San Pedro* is legally distinguishable from this case.

According to Maistros, *San Pedro* establishes that, once an owner petitions for limitation of liability, the jurisdiction of the limitation court to hear and determine every claim against the shipowner becomes exclusive and it is the duty of a non-limitation tribunal, once the limitation proceeding is brought to its attention, to stop all further proceedings in separate suits upon claims to which the limited liability act applies. However, the facts of *San Pedro* are very different from those of the case at hand. In *San Pedro*, the shipowner moved for a stay of the action brought by the salvor outside of the limitation of liability proceedings when the limitation proceeding was still pending. In the instant case, the non-limitation proceeding—that is, the arbitration—was instituted after the Louisiana court had dismissed Exportkhleb's claim "without prejudice" and after the conclusion of the limitation of liability proceeding. In the instant case, Maistros did not raise the issue of whether the terms of the final order entered in the limitation of liability proceeding divested the arbitrators of the power to adjudicate Exportkhleb's claim until approximately two and a half years after the proceeding was entered and after the arbitrators had rendered their final award in favor of Exportkhleb and against Maistros Corporation. In addition, the arbitration was commenced by Maistros (the shipowner) itself. *San Pedro* does not establish that the defense was non-waivable here. And Maistros has brought no other cases to our attention on the issue of non-waivability, and our research has uncovered no authority supporting its position.

## RES JUDICATA, ETC.

Maistros also contends, on the basis of the Louisiana court's enjoining of any

further proceedings against Maistros, that confirmation of the award is barred as res judicata. However, the claims in the Louisiana proceeding were settled, not adjudicated on the merits, and Exportkhleb was given specific permission to withdraw its claim from the Louisiana proceeding without prejudice. Thus there is no res judicata bar. Furthermore, the defense was never presented to the arbitrators.

Maistros also contends that the arbitration violates an earlier court order, namely, the final decree of the Louisiana court that all persons having claims against Maistros arising from the voyage were permanently enjoined from pursuing their claims. However, the order was not binding on Exportkhleb because it was not a party at the time of the entry of the order and it was given no notice of the petition for the decree or provided any opportunity to object. Furthermore, Maistros waived this objection by not raising it before the arbitrators.

### COGSA

■ Maistros also claims that the panel's decision that Exportkhleb's cargo damage claim was not time-barred under the Carriage of Goods by Sea Act's ("COGSA") statute of limitations was irrational and in manifest disregard of the law. This argument was made before the arbitrators, and not waived. COGSA provides that

> In the event the carrier and the ship shall be discharged from all liability in respect of loss or damage unless suit is brought within one year after delivery of the goods ...

COGSA, 46 U.S.C.App. § 1303(6).

The accident occurred on January 24, 1985. On February 12, 1985, Exportkhleb brought an action against Maistros on its cargo damage claim. In early April, 1985 Exportkhleb filed its claim in the limitation proceeding. On July 29, 1986, Exportkhleb's motion to withdraw/dismiss its claims was granted by the Louisiana court. On January 6, 1987, Maistros commenced arbitration on its general average claim. On May 17, 1989, Exportkhleb asserted its counterclaim for cargo damage. The panel ruled that

Exportkhleb responded to Maistros' claim in the limitation proceeding in the United States District in Louisiana and moved to have that matter dismissed. The litigation was dismissed without prejudice and this arbitration was commenced within one year thereafter. It is the panel's view that Exportkhleb has complied with the letter and spirit of the COGSA time bar provision.

(Final Award, pages 13–14).

It may be that the arbitrators misunderstood the law or the facts since in fact Exportkhleb did not assert its counterclaim until over two years after it withdrew its claim from the limitation proceeding. However, "mere error" does not suffice to establish "manifest disregard of the law": "[T]he arbitrator [must have] appreciate[d] the existence of a clearly governing legal principle, *but decide[d] to ignore or pay no attention to it.*" *Merrill Lynch, Pierce, Fenner & Smith v. Bobker*, 808 F.2d 930 (2d Cir.1986) (emphasis added).

> "Judicial inquiry under the 'manifest disregard' standard is [ ] extremely limited. The governing law alleged to have been ignored by the arbitrators must be well defined, explicit, and clearly applicable. We are not at liberty to set aside an arbitration panel's award because of an arguable difference regarding the meaning or applicability of laws urged upon it."

*Id.* There is no evidence here that the arbitrators' ruling, even if in error, was in manifest disregard of the law.

■ Finally Maistros argues that the award is irrational and therefore violates the Federal Arbitration Act, 9 U.S.C. § 10(c), which provides that an award may be vacated for "misbehavior by which the rights of any party have been prejudiced." The sole case Maistros cites in support of this theory is *Swift Industries Inc. v. Botany Industries Inc.*, 466 F.2d 1125, 1134 (3d Cir.1972). However, even the *Swift* court noted that "the irrationality principle must be applied with a view to the narrow scope of review in arbitration cases." *Swift*, 466 F.2d at 1134. That standard has not been met here since it is not the case

that the award is not supported by any evidence in the record.

Maistros' motion to vacate the arbitration award is thus denied and Exportkhleb's motion to confirm the award is granted.

It is so ordered.

